13 A.3d 98

ZURICH AMERICAN INSURANCE COMPANY

v.

UNINSURED EMPLOYERS' FUND, et al.

No. 1509, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Feb. 3, 2011.

David B. Stration (D. Stephenson Schwinn, Mark H. Kopelman, Jordan, Coyne & Savits, LLP, on the brief), Washington D.C., for appellant.

Samuel P. Piazza (Douglas F. Gansler, Atty. Gen., on the brief), Annapolis, MD, for appellee.

Panel: EYLER, JAMES R., ZARNOCH, J. FREDERICK SHARER (Retired, specially assigned), JJ.

JAMES R. EYLER, J.

The primary issue presented by this appeal involves the interpretation of a "workers compensation and employers liability" policy (the "Policy") and, specifically, a "residual market limited other states insurance endorsement" (the "Endorsement"). The Policy was issued in Delaware by American Zurich Insurance Company ("Zurich"), appellant, to A & B Enterprises, Inc., a Delaware corporation ("A & B"), with its principal place of business in Delaware.

A & B contracted with Richard Townsend, a resident of Salisbury, Maryland, to build a pole building on Mr. Townsend's land, located near Salisbury. A & B then subcontracted the work to Wayne and Marie Travis, Delaware residents, doing business as WMT Contracting ("WMT"). Dean J. Young, a Delaware resident, was employed by WMT; while working on the job site near Salisbury, he fell and was injured.

Mr. Young filed a workers compensation claim against WMT in Delaware but did not collect benefits because WMT was uninsured. Mr. Young then filed a workers compensation claim in Maryland against WMT. The Uninsured Employers' Fund ("UEF")[1], appellee, impleaded both A & B as statutory employer, and its insurer, Zurich. The Maryland Workers' Compensation Commission (the "Commission") concluded that A & B was a statutory employer, Mr. Young sustained a compensable injury, and the Policy provided coverage for the claim.

Zurich petitioned for judicial review in the Circuit Court for Montgomery County. The circuit court affirmed, and this appeal followed. In an opinion filed on November 3, 2010, we affirmed the judgment. On December 1, 2010, Zurich filed a motion for reconsideration. Because we agreed that Zurich's motion had merit, we granted it and withdrew our earlier

---

1. The purpose of UEF is to pay workers' compensation claims against employers who fail to obtain coverage for their employees. Md.Code (2008 Repl.Vol.), Labor and Employment Article (LE), § 9–1002.

opinion. Albeit for a different reason than originally stated, we shall affirm the judgment.

## Background

A & B was in the business of constructing "farm buildings," "food shelters," and "post frame buildings." A & B performed 90% of its work in Delaware and 10% of its work in Maryland. Mr. Young sustained an accidental injury on May 16, 2005, while working on a pole building near Salisbury, in the course of his employment by WMT.

Mr. Young was hired by WMT, in Delaware, a few days prior to May 16. WMT performed 95% of its work in Delaware, 3% of its work in Maryland, and 2% of its work in Virginia. Consequently, Mr. Young understood that he would generally work in Delaware, with the rest of his work time in Maryland. A & B anticipated that construction of the pole building would take approximately a month. Mr. Young started working on the pole building near Salisbury on May 12. He was involved only in the framing and was expected to complete his work on May 17, had the accident not intervened. On each day, Mr. Young traveled from his home in Delaware to WMT's place of business in Delaware and, from there, Mr. Travis transported Mr. Young and other employees to the job site. After Mr. Young sustained an accidental injury, he continued to work for WMT at a job site in Delaware but, because of his injuries, was able to work only one day. In July, 2005, he attempted to return to work for WMT, but WMT did not respond to his efforts to return.

In December, 2006, Mr. Young filed a workers' compensation claim against WMT in Delaware, with that state's Industrial Accident Board (the "Board"), seeking benefits. On February 9, 2007, the Board found that WMT admitted that Mr. Young sustained an injury during the course of employment but that WMT was uninsured at the time of the accidental injury. The Board found that the claim was compensable and required WMT to post a bond to secure the payment of compensation. Apparently, WMT did not post the bond, but

after Mr. Young failed to appear for a hearing scheduled on June 28, 2007, the Board dismissed the claim.

On February 28, 2007, Mr. Young filed a workers' compensation claim in Maryland. On May 29, 2008, after A & B and Zurich had been added as parties, the Commission held a hearing. On June 5, 2008, the Commission issued an order, in which it ruled that Mr. Young was employed by WMT; that WMT was uninsured; that A & B was the statutory employer of Mr. Young; that A & B was covered by the Policy; and that Mr. Young had sustained a compensable injury. With respect to coverage, the Commission found that A & B was covered by the Policy by virtue of the terms of the Endorsement.

On July 7, 2008, Zurich filed a petition for judicial review in circuit court. Zurich and UEF each filed a motion for summary judgment. On June 23, 2009, the circuit court, after holding a hearing, granted UEF's motion and denied Zurich's motion. In holding that there was coverage, the court relied heavily on *Kacur v. Employers Mutual,* 253 Md. 500, 254 A.2d 156 (1969).

Zurich filed a motion for reconsideration, and the court denied it. This appeal followed.

### The Policy and Endorsement

The Policy was issued in Delaware. In the application for the Policy, A & B stated that it did not conduct operations in states other than Delaware. The "information page" of the Policy reflects that the Policy period was from July 21, 2004 to July 21, 2005. Thus, the Policy was in effect at the time of Mr. Young's injury. The same page, in paragraph 3.A, provides that the workers compensation portion of the coverage "applies to the Workers Compensation Law of [Delaware]." Under a heading entitled, "OTHER STATES INSURANCE," the Endorsement is referenced.

The Endorsement is entitled "RESIDUAL MARKET LIMITED OTHER STATES INSURANCE ENDORSEMENT" and provides:

A. How This Insurance Applies

1. We will pay promptly when due the benefits required of you by the workers compensation law of any state not listed in Item 3.A of the Information Page if all of the following conditions are met:

   a. The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A of the Information Page or was, at the time of injury, principally employed in a state listed in Item 3.A of the Information Page; and

   b. The employee claiming benefits is not claiming benefits in a state where, at the time of injury, (i) you have other workers compensation insurance coverage, or (ii) you were, by virtue of the nature of your operations in that state, required by that state's law to have obtained separate workers compensation insurance coverage, or (iii) you are an authorized self-insurer or participant in a self-insured group plan; and

   c. The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary.

2. If we are not permitted to pay the benefits directly to persons entitled to them and all of the above conditions are met, we will reimburse you for the benefits required to be paid.

3. This insurance does not apply to fines or penalties arising out of your failure to comply with the requirements of the workers compensation law.

## IMPORTANT NOTICE

If you hire any employees outside those states listed in Item 3.A on the Information Page or begin operations in any such state, you should do whatever may be required under that state's law, as this endorsement does not satisfy the requirements of that state's workers compensation law.

*The Maryland Statutory Scheme*

With exceptions not here relevant, "each employer shall secure compensation for covered employees of the employer" by maintaining insurance with the Injured Workers' Insurance Fund, maintaining insurance with an authorized insurer, or by maintaining self-insurance. LE § 9–402(a). An insurer issuing policies in Maryland is required to maintain an office in Maryland. COMAR 14.09.06. The Commission must approve the form of a workers compensation insurance policy. LE § 9–309(e) and Insurance § 19–402. A tax is assessed against each insurer pursuant to LE § 9–316(c). If an employer fails to secure insurance coverage pursuant to LE § 9–402, the employer must pay premiums to become insured with the Injured Workers' Insurance Fund (IWIF).[2] LE § 9–407.

The workers' compensation act applies to employers with at least one covered employee. LE § 9–201. An individual is presumed to be a covered employee while in the service of an employer under an express or implied contract of hire. LE § 9–202. A "covered employee" is a person for whom an employer is required to provide workers' compensation coverage. LE § 9–101(f). An individual is a covered employee while working for the individual's employer "in this State...." LE § 9–203(a). There are exceptions. "A casual employee is not a covered employee." LE § 9–205. In addition,

[a]n individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

(i) the individual and employer make a contract of hire in another state;

(ii) neither the individual nor the employer is a resident of this State;

(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar

---

2. IWIF, in pertinent part, insures employers against liability under Title 9 of the Labor and Employment Article.

law of another state to cover the individual while working in this State;

(iv) the other state recognizes the extraterritorial provisions of this title; and

(v) the other state similarly exempts covered employees and their employers from its law.

LE § 9–203(b)(1).

In Maryland, a principal contractor which is not the direct employer of the worker is liable under the following circumstances and, when liable, is commonly referred to as a statutory employer.

A principal contractor is liable to pay a covered employee any compensation that the principal contractor would have been liable to pay had the covered employee been employed directly by the principal contractor if:

(1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;

(2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and

(3) the covered employee is employed in the execution of that work.

LE § 9–508(a). To the extent pertinent, an award is payable by the UEF if an employer fails to secure payment of compensation in accordance with § 9–402. *See* LE § 9–1002.

## *The Contentions*

The parties tacitly agree that A & B was the statutory employer of Mr. Young at the time of Mr. Young's accidental injury. Zurich contends that the Endorsement is applicable, and its language controls the outcome of this case. Zurich concedes that subsection A.1.a. is satisfied because Mr. Young was hired in the state of Delaware. Zurich contends that A.1.b. requires that all three sub parts, *i.e.*, (i), (ii), and (iii), must be satisfied in order for subsection b. to be satisfied.

According to Zurich, because A & B was required, by Maryland law, to obtain insurance for its Maryland operations, relying on the statutes referenced above, *Smigelski v. Potomac Insurance Company of Illinois*, 403 Md. 55, 62, 939 A.2d 189 (2008), and *Granite State Ins. Co. v. Hernandez*, 191 Md.App. 548, 567, 992 A.2d 528 (2010), subsection (ii) is not satisfied. Additionally, there is no evidence that A & B is an authorized self insurer, and thus, subsection (iii) is not satisfied.

Zurich also contends that Mr. Young's work in Maryland was not temporary, and thus, subsection A.1.c. is not satisfied. Relying heavily on *Granite State, supra,* Zurich argues that Mr. Young was "regularly employed" in Maryland and a "covered employee."

With respect to the decision in *Kacur, supra,* relied on by the circuit court, Zurich argues that it stands for the proposition that if a workers' compensation claimant has a choice of fora, the employer and its workers' compensation insurer are liable for benefits in either forum. Zurich explains that *Kacur* holds that an insurer is liable in a given forum only to the extent that the insurer would have been liable if the claimant had filed in another available forum. In this case, Zurich argues, *Kacur* does not apply because, as of the time of Mr. Young's accidental injury, Delaware did not recognize the statutory employer doctrine. Thus, according to Zurich, had Mr. Young filed a claim in Delaware against A & B, it would have been denied. In other words, while Mr. Young had a choice of fora as to WMT, it did not have a choice as to A & B. Moreover, Zurich observes that, in *Kacur,* there was no endorsement similar to the Endorsement in this case. Zurich argues that the *Kacur* decision rested on the intention of the parties, not on public policy independent of the applicable policy's terms.

UEF contends that there is coverage under the terms of the Endorsement. UEF, observing that "or" is disjunctive, argues that A.1.b. is satisfied if either (i), (ii), or (iii) is satisfied. Thus, according to UEF, A.1.b. is satisfied because Zurich

concedes that A & B did not have "other workers compensation insurance coverage" in Maryland, *see* (i), and it was not an authorized self insurer, *see* (iii). In addition, UEF argues that, because Mr. Young was employed in this State temporarily, separate coverage was not required.

UEF contends that the terms of A.1.c. are satisfied because Mr. Young's employment in Maryland was temporary. UEF argues that the concept is fact based, there was substantial evidence to support the Commission's determination, and it should be affirmed. With respect to the Endorsement, UEF also argues that, to the extent the Endorsement is ambiguous, it should be construed against Zurich.

Finally, UEF contends that *Kacur* also provides a basis for coverage, not dependent on the terms of the Policy. UEF argues that whether Delaware recognized statutory employer liability at the pertinent time is irrelevant to a *Kacur* analysis. Because Mr. Young had a choice of proceeding in Maryland or Delaware as to WMT, and his claim was compensable in both, *Kacur* applies. In addition, UEF takes issue with Zurich's assertion that Delaware did not recognize statutory employer liability at the time of the injury. Lastly, UEF contends that had Mr. Young pursued a claim in Delaware against A & B, under Delaware's choice of law rules, the Delaware Board would have applied Maryland's law relating to statutory employers.

### Standard of Review

Ordinarily, a decision of the Commission is entitled to deferential judicial review, as is generally true when reviewing administrative decisions. *See, e.g., W.M. Schlosser v. Uninsured Employers' Fund,* 414 Md. 195, 203, 204, 994 A.2d 956 (2010) and *Granite State,* 191 Md.App. at 557, 558, 992 A.2d 528. The case before us, however, turns on the interpretation of an insurance policy and other questions of law, which were decided on summary judgment.

In Maryland, "the interpretation of an insurance policy is guided by the same principles that apply to the construction of other contracts." *Philadelphia Indem. Ins. Co. v. Mary-*

*land Yacht Club, Inc.*, 129 Md.App. 455, 467, 742 A.2d 79 (1999). When construing a contract, our goal is to "ascertain and effectuate the intention of the contracting parties." *Id.* Maryland courts give "the words of the contract their ordinary and accepted meaning, looking to the intention of the parties from the instrument as a whole." *Finci v. American Cas. Co.*, 323 Md. 358, 369–70, 593 A.2d 1069 (1991). The contract is "[t]he primary source for determining the intent of the parties." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md.App. 217, 291, 674 A.2d 106 (1996)(and cases cited therein), *aff'd*, 346 Md. 122, 695 A.2d 153 (1996[1997] ).

*Granite State*, 191 Md.App. at 558–559, 992 A.2d 528.

The standard of review applied in reviewing a grant of a motion for summary judgment is well-established in Maryland. "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact' and 'the party in whose favor judgment is entered is entitled to judgment as a matter of law.' " *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294, 936 A.2d 343 (2007) (quoting Md. Rule 2–501(f)). The reviewing court is obliged to conduct an independent review of the record to determine if there is a dispute of material fact. *Id.* (citing *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 714, 922 A.2d 538 (2007)) (additional citations omitted). "A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute." *Berringer v. Steele*, 133 Md.App. 442, 470–71, 758 A.2d 574 (2000) (citations omitted). Mere general allegations of conclusory assertions will not suffice. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993); accord *Gunby v. Olde Severna Park Improvement Ass'n, Inc.*, 174 Md.App. 189, 235, 921 A.2d 292, aff'd, 402 Md. 317, 936 A.2d 365 (2007).

Because the reviewing court "has the same information from the record and decides the same issues of law as the trial court, its review of an order granting summary judgment is de novo." *ABC Imaging of Wash., Inc. v. Travelers*

*Indem. Co. of Am.*, 150 Md.App. 390, 394, 820 A.2d 628 (2003) (internal quotation marks omitted) (citations omitted). When conducting its de novo review, all reasonable inferences must be resolved in favor of the non-moving party. *Conaway v. Deane*, 401 Md. 219, 243, 932 A.2d 571 (2007) (citations omitted). "Even when the underlying facts are undisputed, if the undisputed facts are susceptible of more than one permissible factual inference, the choice between those inferences should not be made as a matter of law, and summary judgment should not be granted." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990) (citation omitted). The standard applied by the Court is not whether the trial court was clearly erroneous but whether the trial court was legally correct. *Id.* (citations omitted).

*Injured Workers' Ins. Fund v. Orient Express Delivery Serv.*, 190 Md.App. 438, 451, 988 A.2d 1120 (2010).

## Analysis

██ As previously stated, A & B is a statutory employer and, thus, is liable for benefits. The question of insurance coverage turns on the language in the Endorsement. Subsections a., b., and c. of the Endorsement are joined by "and," and all have to be satisfied. Subsection a. is satisfied if Mr. Young was hired in Delaware or was, at the time of injury, principally employed in Delaware. The three sub-parts in b. are joined by "or," and are disjunctive, but because the lead in phrase is in the negative ("We will pay when ... the employee ... is not claiming benefits in a state where ...."), satisfaction of any of the three sub-parts prevents coverage. Thus, subsection b. is satisfied if A & B had other coverage, was required, by virtue of its operations in Maryland, to have separate coverage, or was a self-insurer. Subsection c. is satisfied if the duration of the work being performed by Mr. Young was temporary. In essence, the Endorsement provides coverage for temporary operations, even though the operations are outside of the named state of coverage, unless the employer has other workers compensation coverage, or the

employer is required to have separate coverage in the outside state, or is a self-insurer in the outside state.

We conclude that the Endorsement provides coverage in this instance. Mr. Young was hired in Delaware, and thus, A.1.a. is satisfied. Under subsection A.1.b., A & B did not have other workers compensation insurance in Maryland and was not an authorized self-insurer in Maryland. Thus, the question is whether A & B was required to have "separate workers compensation insurance coverage" in Maryland.

In Maryland, an employee is a "covered employee" if injured in this State, *see* LE § 9–203(a), unless the employee was a "casual employee," *see* LE § 9–205, or was in this State only "intermittently or temporarily," *see* LE § 9–203(b)(1), and the other requirements of LE § 9–203(b)(1) are met.

With respect to § 9–205:

Although the term is not defined by statute, "this Court has consistently held that ... application of the term, 'casual employee,' should be made according to the particular facts presented in each case." *Wood v. Abell*, 268 Md. 214, 221, 300 A.2d 665, 669 (1973). This Court has noted that " 'where the employment for one job cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual.' " *Lupton v. McDonald*, 241 Md. 446, 452, 217 A.2d 262, 265 (1966) (quoting *Consumers' Mut. Oil Producing Co. v. Indus. Comm'n.*, 289 Ill. 423, 124 N.E. 608 (1919)). Some of the factors we use to determine whether an employee is a casual employee are: the nature of the work, the duration of the employment, and the nature of the contract of employment. *Wood*, 268 Md. at 222, 300 A.2d at 669 (quoting *Moore v. Clarke*, 171 Md. 39, 53, 187 A. 887, 893 (1936)). We use these factors to determine whether an employment arrangement is casual, and the question "must be determined with principal reference to the scope and purpose of the hiring rather than with sole regard to the

duration and regularity of the service." *State Accident Fund v. Jacobs*, 134 Md. 133, 135, 106 A. 255, 255 (1919). *Smigelski v. Potomac Ins. Co.*, 403 Md. 55, 62–63, 939 A.2d 189 (2008).

■ In this case, the evidence is that Mr. Young was hired as a regular employee, with the intention by both employer and employee that he would continue employment for a regular and indefinite term. Thus, he was not a "casual" employee within the meaning of § 9–205, and there is no contention to the contrary.

In our earlier opinion, we noted that a nonresident individual hired in another state is not a "covered employee" in Maryland if working in this State "intermittently or temporarily." LE § 9–203(b)(1). Relying heavily on § 9–203(b)(1)(i), (ii), and (iii), we concluded that separate coverage was not required in Maryland. In doing so, we noted that § 9–203(b)(1) contains other requirements, *see* (iii), (iv), and (v), but observed that the parties did not raise them.

On motion for reconsideration, Zurich pointed out that the basis of our decision was not the basis relied on by the Commission and was not raised in this Court. Additionally, in its motion, Zurich argued that, contrary to our belief, Delaware does not have a reciprocal arrangement with this State that would fulfill the requirements of subsections (iii), (iv), and (v). In response to Zurich's motion, UEF argued, inter alia, that Delaware does have a statute that satisfies the reciprocity requirement. We agree with Zurich that the issue was not the basis of the Commission's decision; consequently, we accept that Mr. Young was a "covered employee," and that, for present purposes only, Delaware does not satisfy the reciprocity requirement.

Nevertheless, we reach the same result, for a different reason. The Endorsement provides coverage under the law of states other than Delaware, in its lead-in clause ("we will pay . . . benefits required of you by workers compensation law of any state [other than Delaware] . . . if all of the following

conditions are met."). Thus, if the subsections are satisfied, the effect is coverage for benefits required by *Maryland law.*

Maryland requires insurance coverage coextensive with liability for benefits, but the statutory and regulatory requirements related to insurers address insurers doing business in Maryland and issuing policies in Maryland. Typically, such policies are issued to Maryland employers or employers doing regular business in Maryland. Such employers are required to have coverage that is in full compliance with all of Maryland's laws.

Obviously, if coverage exists under the Endorsement, there is insurance coverage for Mr. Young's injuries. The Endorsement does not state, however, that merely because the state in which injury occurred requires insurance coverage, coverage does not exist under the Endorsement. The Endorsement provides coverage unless "by virtue of the nature of [A & B's] operations," in Maryland, A & B was required by Maryland law "to have obtained separate workers compensation insurance coverage...." A & B did not regularly do business in Maryland; as discussed below, Mr. Young was working in Maryland temporarily; coverage under the Endorsement satisfies Maryland law; and A & B was not required to have *separate* coverage in Maryland.

Appellant relies on language in *Smigelski* and *Granite State* for the proposition that subsection b. (ii) is satisfied if Maryland requires any insurance coverage, as it does, for Mr. Young as a "covered employee." In both cases, the insurance policy at issue contained an endorsement the same as the one in this case. The issue was not a holding by the Court in either case, however. In *Smigelski,* the employee was a Virginia resident who was employed in Virginia and was injured in Maryland. 403 Md. at 57, 939 A.2d 189. A jury found that the employee was regularly employed in this State and not working in the State temporarily. Similarly, in *Granite State,* the employer was in Virginia, the employee was hired in Maryland, the employee was injured in Maryland, and the employee was principally employed in Maryland. 191

Md.App. at 553, 992 A.2d 528. Thus, the employee was not hired in Virginia and was not working in this State temporarily.

Appellant's interpretation of the Endorsement renders nugatory the word "separate." Our interpretation is consistent with the purpose and intent of the Endorsement, read in its entirety. Thus, if an employee employed in the state of coverage, in this instance Delaware, is injured in another state which provides for benefits under its laws, in this instance Maryland, but the employer does not regularly do business in that state, and the employee is performing work in that state on a temporary basis, the Endorsement provides coverage.

This brings us to subsection c. The question of whether work is temporary is often a question of fact, but no issue of fact has been raised by the parties. Each party asserts that it is correct as a matter of law. Under LE § 9–745(a), the decision of the Commission is prima facie correct. Under the circumstances of this case, we cannot hold as a matter of law that Mr. Young was not "temporarily" in this State.

Consequently, we conclude that the "duration of the work being performed by [Mr. Young was] temporary," within the meaning of A.1.c. Mr. Young was expected to work in Maryland only for a few days. In *Granite State*, the employee was employed in Maryland, worked on three projects in Maryland, and was injured in Maryland. The employer, who was insured in Virginia, argued that its intention was for the employee to work primarily in Virginia in the future. *Id.* at 560–61, 992 A.2d 528. We held that what might happen in the future was mere speculation and conjecture, and consequently, for coverage purposes, the employee was principally employed in Maryland, not Virginia, at the time of the accident. *Id.* at 561, 992 A.2d 528. In *Granite State*, the terms of the policy included an endorsement identical to the Endorsement in this case. As a result of our conclusion, the Endorsement did not provide coverage because A.1.a. was not satisfied (the employee was not hired in Virginia and was not principally employed in Virginia). In addition, with respect to A.1.c., we observed that

there was not evidence that the employee's "work in Maryland was temporary to otherwise regular work in Virginia." *Id.* at 568, 992 A.2d 528. In the case before us, there was evidence that it was the present intention of the parties to the employment agreement that Mr. Young generally work in Delaware. The parties expected that Mr. Young would be in Maryland only a few days.

To recap, Mr. Young was hired in Delaware within the meaning of A.1.a. Maryland did not require "separate workers compensation insurance coverage" within the meaning of A.1.b. of the Endorsement. Mr. Young's work in Maryland was temporary within the meaning of A.1.c.

As a result of this conclusion, we need not reach the parties' remaining contentions.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**